**BONNER C. WALSH**
Oregon State Bar ID Number 131716
bonner@walshpllc.com
WALSH LLC
PO Box 7
Bly, Oregon 97622
Phone          541.359.2827
Facsimile      866.503 8206

**JACK E. MCGEHEE**
Oregon State Bar ID Number 160400
jmcgehee@lawtx.com
McGehee, Chang, Barnes, Landgraf
10370 Richmond Ave, Suite 1300
Houston, Texas 77042
Phone          713.864.4000
Facsimile      713.868.9393

**Special Counsel for Plaintiff**
(Additional counsel appear on signature page)

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **DAWN CAVEYE, GINA and DANA DALTON, and individually and on behalf of all others similarly situated**<br><br>Plaintiffs,<br>v.<br><br>**LITHIA MOTORS, INC., LITHIA FINANCIAL CORPORATION, SALEM-V, LLC d/b/a VOLKSWAGEN OF SALEM, AND LITHIA MEDFORD HON, INC.**<br>Defendants. | CIVIL ACTION NO. 6:17-CV-0674<br><br>**CLASS ACTION ALLEGATION COMPLAINT**<br><br>TRUTH IN LENDING ACT (15 U.S.C § 1601, *et seq.*); AND STATE CLAIMS.<br><br>DEMAND FOR JURY TRIAL |

## INTRODUCTION

Dawn Caveye and Gina and Dana Dalton (hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Lithia Motors, Inc., Lithia Financial Corporation, Salem-V, LLC d/b/a Volkswagen of Salem, and Lithia Medford Hon Inc. (for the purpose of this Complaint, these Defendants and their subsidiaries shall be collectively referred to herein as "Lithia" or "Lithia Defendants").

## PARTIES

1. Plaintiff Dawn Caveye is a resident of the state of California and is an individual that resides in Siskiyou County.

2. Plaintiffs Dana and Gina Dalton are residents of the state of Oregon and reside in Jackson County.

3. Defendant Lithia Motors, Inc. ("Lithia Motors") is a domestic corporation with a principal office located at 150 N. Bartlett St., Medford, OR 97501. Defendant may be served with process by serving its registered agent, National Registered Agents, Inc., 388 State Street Suite 420, Salem, OR 97301. Lithia Motors, Inc. is the parent corporation of over 100 subsidiaries.

4. Defendant Lithia Financial Corporation ("Lithia Financial") is a domestic corporation with a principal office located at 150 N. Bartlett St., Medford, OR 97501. Defendant may be served with process by serving its registered agent, National Registered Agents, Inc., 388 State Street Suite 420, Salem, OR 97301.

5. Defendant Salem-V, LLC ("Salem-V") is the registrant for Volkswagen of Salem with its principal place of business located at 745 Liberty St. NE, Salem, OR 97301. Defendant may be served with process by serving its registered agent, National Registered Agents, Inc., 388 State Street Suite 420, Salem, OR 97301.

6.  Defendant Lithia Medford Hon, Inc. ("Lithia Honda") is a domestic corporation with a principal place of business located at 4095 Crater Lake Highway, Medford, OR 97504. Defendant may be served with process by serving its registered agent, National Registered Agents, Inc., 388 State Street Suite 420, Salem, OR 97301.

## JURISDICTION

7.  This Court has federal question jurisdiction over this case under 15 U.S.C. § 1640(e) and 28 U.S.C. § 1331.   Additionally, this Court has jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because there is at least minimal diversity of one Plaintiff and Defendant that are citizens of different states, there are more than 100 members of the class and the aggregate amount in controversy exceeds $5,000,000, exclusive of attorneys' fees, interest, and costs.

8.  Furthermore, jurisdiction is proper in this Court under the doctrine of pendent jurisdiction for the other Oregon claims pursuant to 28 U.S.C. § 1367.

9.  Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and (c), because: (i) Defendants are actively doing business in this State and subject to personal jurisdiction throughout the State; (ii) upon information and belief, Defendants transact business in the State and in the District because they have contracted with residents of the District through their sales with residents of the District; (iii) upon information and belief Defendants have committed illegal acts in the District by and through their sales and/or finance practices with residents of this district, and (iv) a substantial part of the events or omissions giving rise to the claim occurred in this District.

## VICARIOUS LIABILITY

10. Whenever in this petition it is alleged that a Defendant did any act or thing, it is meant that said Defendant's alter egos, members, agents, officers, servants, borrowed servants, employees or representatives did such act or thing and that the time such act or thing was done, it was done with the full authorization or ratification of Defendant or was done in the normal and routine course and scope of employment of Defendant's members, officers, agents, servants, borrowed servants, employees or representatives.

11. Upon information and belief, the Defendants (Lithia Motors, Lithia Financial, Salem-V, and Lithia Honda) are operated as one single business enterprise and that these entities are in fact the alter egos of each other. These entities share the same address, same officers, and are controlled and operated by Defendant Lithia Motors. Therefore, the Plaintiffs bring suit against the Defendants jointly and severally, and refer to these Defendants collectively as "Lithia" or "the Lithia Defendants."

### DAMAGES COMMON TO CLASS MEMBERS

12. All class members will have damages that are similar but of differing natures. These damages can be broken down into two main groups: those for yield spread premium claims; and those for claims involving payments to third parties.

13. For yield spread premium claims, Defendants' failure to disclose that class members qualified for a lower interest rate caused class members to receive the higher, marked-up rate. Class members' ignorance of the lower interest rate caused damages in the amount of the yield spread,[1] i.e., the difference between the higher interest rate Defendants gave to Plaintiff and the lower interest rate that the lender offered.

---

[1] *See Sanders v. Francis,* 277 Or. 593, 598, 561 P.2d 1003 (1977).

14. The below graphic is illustrative of these claims. This information comes directly from a "deal recap" sheet from Defendants[2]. Here it can clearly be seen that the Defendants marked up a putative class member's deal by 2 percent[3] and received a kickback from the bank of over $1200.00.

| Buy Rate | 11.78 | Contract Rate | 13.78 | Term | 72 | SPREAD: | 2.0( |
|---|---|---|---|---|---|---|---|

| | Sale | Cost | Gross | % |
|---|---|---|---|---|
| Dealer Reserve | _____ | ____ ___ | 1208.23 | .70 |

15. For payments to third party claims, Defendants' misrepresentation of the actual amount paid to third parties caused class members to pay the higher, marked-up amounts for the service contracts, when that amount was not the actual amount paid to third parties. Defendants should have disclosed the actual amount paid, which would have automatically lowered the total sale price. As a result of Defendants' violations, class members were damaged by the difference between the amount he paid for the service contract and the actual amount Defendants paid to third parties.

16. The below graphic is illustrative of these claims. This information comes directly from a "deal recap" sheet from Defendants[4]. Here it can clearly be seen that the Defendants paid only $821.60 for the third party product, but disclosed the cost as $2,054.00 thereby receiving an undisclosed increase of the sales price of more than $1,200.00.

---

[2] This information is from a different deal where Counsel was able to obtain a copy of the deal recap sheet that demonstrates a rate spread. Upon information and belief this is a common practice of Defendants.

[3] It should be noted, that percentages are not equivalent to "points." As used in the finance industry a point is approximately 1% of the loan amount. Thus in the example transaction (which was for approximately $24,600) this is approximately 5 "points" that the deal was marked up. Put another way, the markup was about a 17% increase on top of the buy rate.

[4] See footnote 2.

| | Sale | Cost | Gross 486.72 | % |
|---|---|---|---|---|
| Dealer Reserve | | | | |
| Service Contract | 2054.00 | 821.60 | 1232.40 | 60 |

17. In other deals, Defendants pay a "Bank Fee" where amounts over $100 were paid to the bank, in order to obtain financing. This amount is not disclosed to class members. The below graphic is illustrative of such a fee.

| 1. | BANK FEE | 750.00 |
|---|---|---|
| 2. | | |

After the Defendants lock in the transaction they then receive a "kick-back" from the transaction as shown below.

| | Sale | Cost | Gross 486.72 | % |
|---|---|---|---|---|
| Dealer Reserve | | | | |

In this situation, the Defendants make a payment that exceeds $100 to the third-party bank and then receive a portion back as a kickback. Such payments must be disclosed under current Oregon Law.

18. Damages simply are the false inflated cost minus the true cost of the product—the portion that the Defendants chose not to disclose—the portion that unfairly enriched the Defendants—the portion that the putative class member did not know about and paid extra due to the Defendant's conduct.

**F**ACTUAL **A**LLEGATIONS

19. This case is about a scheme and conspiracy by Defendants to take advantage of consumers during what is often the second largest purchase they make in their lifetime – purchasing a vehicle. Defendants prey on consumers by failing to disclose and in fact misrepresenting the large profits they make when arranging financing and providing products from third parties. They grossly overstate amounts paid to third parties, when the truth is they make an under-the-

table profit. Kickbacks and skimmed fees plague each putative class member's transaction. In reality, Defendants provide virtually no services and charge unconscionable amounts to victims like Plaintiffs and the class members – all in violation of Federal and State law.

20. Consumers are entitled to be treated in a fair and non-deceptive manner during negotiations to buy or lease a motor vehicle, including the right to receive timely, accurate and non-misleading information about the cost of the vehicle and all related goods, accessories, services, products or insurance they are buying or leasing." OAR 137-020-0020(3)(m) OFFICIAL COMMENTARY. Defendants have wholly failed to treat their customers in a fair and non-deceptive manner by providing misleading or inaccurate information about the cost of vehicles, financing, and other services and products. Such violations lead to numerous Federal and State law claims.

21. The financing and products that Plaintiffs complain of have amounted to massive profits to Lithia nationwide, in the amount of $137,067,000.00 during the six months ending June 2015.[5] In that report Lithia also admits that their gross profit margin on these products is 100% and that it makes up 24% of total gross profits for Lithia. In April of 2016, Lithia filed a report that stated for the three months ending March 31, 2016, the revenue from these products was 77,638,000.00[6]. Again, in that 10Q, Lithia stated that the gross profit margin for Finance and Insurance Products was 100%. Lithia's September, 2016 10Q showed its revenue for the nine months ending on September 30, 2016 was $246,390,000.00 and still included a 100% profit margin for Finance and Insurance Products.

---

[5] See the 10-Q of Lithia Motors, Inc (NYSE symbol "LAD") filed July 31, 2015.
[6] See the 10-Q of Lithia Motors, Inc (NYSE symbol "LAD") filed April 29, 2016.

**A. Plaintiff Caveye**

22. On or about November 15, 2014, Plaintiff Caveye purchased a used 2013 Honda Pilot from Lithia at its Lithia Honda Medford dealership. Contemporaneously with the sale, Lithia arranged the financing of Caveye's automobile and also sold her products that Lithia obtained from third parties. These products included a vehicle service contract for $1,783.00, as shown in the graphic below:

| c. | Cost of Optional Service Contract paid to the Company named above (covers certain repairs) * | $ | 1783.00 |
|---|---|---|---|

23. On or about October 31, 2016, Plaintiff Caveye purchased a new 2016 Honda Civic from Lithia at its Lithia Honda Medford dealership. Contemporaneously with the sale, Lithia arranged the financing of Caveye's automobile and also sold her products that Lithia obtained from third parties. There were two contracts because Lithia claimed that financing could not be obtained without Gap insurance. In the first transaction, Lithia sold a service contract for $1,387.50, and purported the vehicle sales price was $19,626.00.

ITEMIZATION OF AMOUNT FINANCED

| | | | |
|---|---|---|---|
| 1. Cash Sale Price (including any accessories) | | $ | 19626.00 |
| 2. Downpayment: (If 2d is negative, enter 0 at 2d and enter the negative amount in line 4k below) | | | |
|    a. Cash Downpayment | | $ | 1000.00 |
|    b. Manufacturer's Rebate (if applicable) | | $ | N/A |
|    c. Deferred Downpayment (Pickup Pymt), due N/A , on which there's no finance charge, of | | $ | N/A |
|    d. Trade-in: Value $ 8000.00 Less owing $ 19500.00 Net $ 1500.00 | | $ | 0.00 |
|    Description of Trade-in: 2013 HOND Lien Payoff To: RCU | | | |
|    Total Downpayment (a+b+c+d) (also put this figure on the downpayment line in the Total Sale Price box below) (Do not include 2d if negative) | | $ | 1000.00 |
| 3. Unpaid Balance of Cash Sale Price (1-2) | | $ | 18626.00 |
| 4. Charges other than Finance Charge, Including Amounts Paid to Others on My Behalf: ( * Seller may be retaining a portion of this amount) | | | |
|    a. Cost of Optional Insurance for the Term of this Contract paid to the insurance Company(ies) named above.* | | | |
|       Credit Life $ N/A Credit Disability, Accident and Health $ N/A Other $ N/A | $ | | N/A |
|    b. Cost of required Physical Damage Insurance paid to the Insurance Company named above (covers damage to the vehicle) * | $ | | N/A |
|    c. Cost of Optional Service Contract paid to the Company named above (covers certain repairs) * | $ | | 1387.50 |
| | | | N/A |

Although no further negotiations were done, a driver was dispatched to Ms. Caveye to obtain her signature on a second contract. The second contract included the following terms: vehicle sales price of $17,899.00; a service contract for $2,675.00, and Gap insurance of $695.00.

b. Cost of required Physical Damage Insurance paid to the Insurance Company named above (covers damage to the ...)
c. Cost of Optional Service Contract paid to the Company named above (covers certain repairs) * .......................... $ 2675.00
d. Cost of Optional Mechanical Breakdown Protection paid to the Company named above (covers certain repairs) * ......... $ N/A
e. Cost of Optional Gap Contract* ..................... $ 695.00

24. Just noting the difference from the two contracts, it is obvious that Lithia artificially inflated the cost of the service contract as it increased $1,287.50 between the two transactions. Additionally, upon information and belief, the Gap insurance was improperly marked up as well. The payments to the third parties were not itemized or clearly disclosed to Plaintiff Caveye. The truth is, hidden from Plaintiff Caveye were kickbacks, or under-the-table profits retained by Lithia and split with the third parties. These payment arrangements were purposefully concealed from Plaintiff Caveye.

25. Further upon information and belief, and unbeknownst to Caveye, the financial institution Lithia assigned her loan to had approved her loan application at an interest rate (also sometimes referred to as a "buy rate") that is lower than the 7.99% that was quoted to her as the interest rate. Lithia then prepared Caveye's loan documents providing for an interest rate of 7.99%, financed by Rogue Credit Union. Subsequently, that credit union paid Lithia an undisclosed amount as an illegal "kickback" based on the difference between the interest rate approved by it and the interest rate charged to Caveye. This is something known as the "yield spread premium." This can be coupled with, or there can be stand-alone payments of "bank fees" or "dealer reserve" as discussed above, that may give rise to a kickback as well.

26. Lithia also failed to clearly and conspicuously disclose to Caveye that Lithia did in fact receive additional compensation from the consumer for arranging the financing, which was in the form of a fee or additional loan points.

27. As a result of Defendants' above listed violations of TILA and UTPA, Plaintiff Caveye suffered losses that are objectively verifiable and ascertainable under TILA and UTPA, including, but not limited to, the amount Lithia retained in yield spread premium, the amount

of the kickback received for arranging financing, and/or the sale of third party products. In short, Caveye was overcharged. Defendants disclosed the price paid to third parties for the service contract as $2,675 when the actual amount paid was significantly lower. Defendants disclosed the price paid to third parties for Gap insurance as $695 when the actual amount was significantly lower. Defendants should have disclosed the amount Defendants actually paid to the third parties. The mark-up hurt Plaintiff Caveye. The mark-up was secret. The mark-up was unnecessary. Had the Defendants disclosed the actual amount paid the third parties, Plaintiff would not have been damaged in the amount of the markup. The Defendants could have financed the loan at the lower amount. The Defendants could have sold the service contract and Gap insurance for the lower price. And in fact, the Defendants should have done just that without adding a secret, unnecessary mark-up. If Defendants wanted to charge a higher amount, they could have done that by clearly and conspicuously disclosing and itemizing how much was paid to third parties and how much was retained.

28. In fact, when additional amounts are added, the law requires either no mark-up, or the dealer must itemize where the money will go. Plaintiff Caveye was causally harmed by Defendants' secret, unnecessary mark-up of yield spread premium, extended service contract, and/or Gap insurance. Thus, Caveye was uniformly damaged in the amount of that markup. Had the Defendants itemized as the law requires, Caveye would have known about the mark-up.

29. Alternatively, had Caveye still purchased the marked-up products, she would have done so being fully informed, with no secrets, and would not have been hurt. She would have had the opportunity to make an informed decision with full information, and with bargaining power. Caveye was hurt when she was duped without her consent by paying for a secret, unnecessary mark-up that is unknowingly kicked back to the Defendants.

30. Damages here are more ascertainable than other reported cases.  Here damages require no expert testimony.  They are 100% ascertainable.  They were instantly ascertainable at the time the deal was done.  They can be calculated to the penny using Defendants' own computers.  In fact, Plaintiffs expect that every term required in order to establish damages will be stipulated by the Defendants, the contracted cost, the true cost and the amount of mark-up/kickback.  The numbers are not in controversy.  Examples of the type of information available for every putative class member's respective deal can be found above in paragraphs 12-18.

31. As in *Sanders v. Francis,* 277 Or. 593, 561 P.2d 1003 (1977), the defendant's failure to disclose the lower advertised price caused the plaintiff to pay a higher price for her vehicle. In *Sanders*, the court found that the plaintiff's loss (the difference between the advertised price and the price the plaintiff paid) was a result of the defendant's willful disregard of the advertised price. *Id.* at 598. Similarly, Defendants' willful disregard in failing to disclose the actual amount paid to third parties and the actual cost of credit caused damages in the amount of the kickbacks Defendants received from those transactions.

32. Additionally, given the choice, Caveye would have chosen to (a): pay the lower price for the third party products (service contract and Gap insurance) before it was marked-up by the Defendants, and (b): pay the lower interest rate, before it was marked-up by the Defendants. A full and complete disclosure regarding itemization would have informed Caveye that she had that very choice.

33. The failure to disclose and failure to comply with Federal and State laws were caused by Lithia Honda, and the markup/kickback was charged through Defendant Lithia Financial.  Since Lithia Honda and Lithia Financial are the alter ego(s) of Lithia Motors, these Defendants are jointly and severally liable.

**B. Plaintiffs Gina and Dana Dalton**

34. On or about May 1, 2016, the Daltons purchased a used 2008 Toyota FJ Cruiser from Lithia at Volkswagen of Salem dealership – specifically, from Defendant Salem-V. Contemporaneously with the sale, Lithia arranged the financing of the Daltons' automobile and also sold them products that Lithia obtained from third parties.  These products included a vehicle service contract for $1,900.00, as shown in the graphic below:

| H  Other Charges (Seller must identify who is paid and describe purpose) | | | |
|---|---|---|---|
| to | for Prior Credit or Lease Balance | $ | N/A |
| to N/A | for N/A | $ | N/A |
| to FESC | for VEH. SERV. CONT | $ | 1900.00 |

35. Upon information and belief, and unbeknownst to the Daltons, the financial institution Lithia assigned their loan to had approved their loan application at an interest rate (also sometimes referred to as a "buy rate") that is lower than the 8.99% that was quoted to them as the interest rate.  Lithia then prepared the Daltons' loan documents providing for an interest rate of 8.99%. Subsequently, that lender paid Lithia an undisclosed amount as an illegal "kickback" based on the difference between the interest rate approved by it and the interest rate charged to the Daltons.  This is something known as the "yield spread premium."  This can be coupled with, or there can be stand-alone payments of "bank fees" or "dealer reserve" as discussed above, that may give rise to a kickback as well.

36. Lithia also failed to clearly and conspicuously disclose to the Daltons that Lithia did in fact receive additional compensation from the consumer for arranging the financing, which was in the form of a fee or additional loan points.

37. As a result of Defendants' above listed violations of TILA and UTPA, Daltons suffered losses that are objectively verifiable and ascertainable under TILA and UTPA, including, but not

limited to, the amount Lithia retained in yield spread premium, the amount of the kickback received for arranging financing, and/or the sale of third party products.  In short, the Daltons was overcharged.  Defendants disclosed the price paid to third parties for the service contract as $1,900 when the actual amount paid was significantly lower. Defendants should have disclosed the amount Defendants actually paid to the third parties. The mark-up hurt the Daltons.  The mark-up was secret.   The mark-up was unnecessary. Had the Defendants disclosed the actual amount paid the third parties, Plaintiffs would not have been damaged in the amount of the markup. The Defendants could have financed the loan at the lower amount.  The Defendants could have sold the service contract for the lower price.  And in fact, the Defendants should have done just that without adding a secret, unnecessary mark-up.  If Defendants wanted to charge a higher amount, they could have done that by clearly and conspicuously disclosing and itemizing how much was paid to third parties and how much was retained.

38. In fact, when additional amounts are added, the law requires either no mark-up, or the dealer must itemize where the money will go.  Plaintiffs were causally harmed by Defendants' secret, unnecessary mark-up of yield spread premium, and/or the extended service contract. Thus, the Daltons were uniformly damaged in the amount of that markup.  Had the Defendants itemized as the law requires, Daltons would have known about the mark-up.

39. Alternatively, had Daltons still purchased the marked-up products, they would have done so being fully informed, with no secrets, and would not have been hurt.  They would have had the opportunity to make an informed decision with full information, and with bargaining power.  The Daltons were hurt when they were duped without their consent by paying for a secret, unnecessary mark-up that is unknowingly kicked back to the Defendants.

40. Damages here are more ascertainable than other reported cases.  Here damages require no expert testimony.  They are 100% ascertainable.  They were instantly ascertainable at the time the deal was done.  They can be calculated to the penny using Defendants' own computers.  In fact, Plaintiffs expect that every term required in order to establish damages will be stipulated by the Defendants, the contracted cost, the true cost and the amount of mark-up/kickback.  The numbers are not in controversy.  Examples of the type of information available for every putative class member's respective deal can be found above in paragraphs 12-18.

41. As in *Sanders v. Francis,* 277 Or. 593, 561 P.2d 1003 (1977), the Defendant's failure to disclose the lower advertised price caused Plaintiffs to pay a higher price for her vehicle. In *Sanders*, the court found that the plaintiff's loss (the difference between the advertised price and the price the plaintiff paid) was a result of the defendant's willful disregard of the advertised price. *Id.* at 598. Similarly, Defendants' willful disregard in failing to disclose the actual amount paid to third parties and the actual cost of credit caused damages in the amount of the kickbacks Defendants received from those transactions.

42. Additionally, given the choice, the Daltons would have chosen to (a): pay the lower price for a service contract before it was marked-up by the Defendants, and (b): pay the lower interest rate, before it was marked-up by the Defendants.  A full and complete disclosure regarding itemization would have informed the Daltons that they had that very choice.

43. The failure to disclose and failure to comply with Federal and State laws were caused by Salem-V, and the markup/kickback was charged through Defendant Lithia Financial.  Since Salem-V and Lithia Financial are the alter ego(s) of Lithia Motors, these Defendants are jointly and severally liable.

## CLASS ACTION ALLEGATIONS

44. Pursuant to Fed. R. Civ. P. 23, Plaintiffs brings this suit individually and as representatives of a class of similarly situated persons. The court should enter an order to certify a plaintiff class as follows:

>    (1) All individuals who

>>    (a)     made a payment to either any Lithia entity, or any financial institution assigned the right to collect from any Lithia entity, pursuant to a Retail Installment Contract in which any Lithia entity received a kickback (sometimes referred to as "dealer participation") from a third party financing institution; and/or

>>    (b)     made a payment to either any Lithia entity, or any financial institution assigned the right to collect from any Lithia entity, pursuant to a Retail Installment Contract in which any Lithia entity sold a service contract,  or made a payment exceeding $100.00 to a third party, and failed to specifically itemize each such payment made to the third party.

45. A separate and distinct Truth in Lending Act (TILA) subclass should be certified. Such class should consist of:

>>    All individuals who entered into a Retail Installment Contract with Lithia that was below the applicable annual dollar threshold under the Truth in Lending Act, while such Contract was in violation of TILA due to the inclusion of precluded items.

46. Specifically excluded from the class are all Federal judges and members of their families within the first degree of consanguinity, and the officers, directors and counsel of record of Defendants, and all employees of any Defendant.

47. The proposed Plaintiff class meets the prerequisites of a class.

48. The class is so numerous that joinder of all members is impracticable. Plaintiffs are unable to state the exact number of the members of the class without the discovery of information available to Defendants, but upon information and belief, aver that there are thousands of class members. The number of the members of the class makes it impracticable to bring them all before the court. There are questions of law and fact common to the class. These questions predominate over any questions affecting only individual members of the class. The questions of fact and law affecting the class as a whole, include, but are not limited to:

- whether Defendants represented that the loan agreements involved rights or obligations, which they did not have or involve or which were prohibited by law;
- whether Defendants engaged in any unconscionable action or course of action;
- whether Defendants should be permanently enjoined under the Oregon Unlawful Trade Practices Act from engaging in the same or similar conduct;
- whether Defendants misrepresented or concealed the true interest rates to the borrowers;
- whether Defendants misrepresented or concealed the payment or acceptance of the kickbacks;
- whether the payment or acceptance of kickbacks is a false, misleading or deceptive act or practice;
- whether the payment or acceptance of kickbacks is a scheme to defraud;
- whether Defendants engaged in a civil conspiracy;
- whether the members of the plaintiff classes are entitled to restitution, restoration of property and/or rescission;
- whether Defendants' conduct was committed knowingly;
- whether Defendants' conduct was committed intentionally;
- the amount of the liability of the Defendants;
- whether Defendants entered into illegal kickback agreements;
- whether the members of the Plaintiff classes were damaged by the misrepresentation and/or concealment of the true interest rate;

**COMPLAINT AND JURY DEMAND**                                     P a g e | **16**

- whether Defendants used uniform loan documents to mislead, deceive or defraud the members of the plaintiff classes;

- whether Defendants made payments to third parties exceeding $100.00;

- whether Defendants failed to specifically itemize payments to third parties exceeding $100.00;

- whether the members of the Plaintiff classes are entitled to prejudgment and/or post-judgment interest;

- whether Defendants' violations of the UTPA entitle the class to recover from Defendants attorney's fees;

- whether Defendants' violations of TILA entitle the class to recover from Defendants attorney's fees;

- whether Defendants' violations of the UTPA entitle the class to recover punitive damages;

- whether Defendants' violation of the UTPA entitle the class to injunctive relief;

- whether Defendants are jointly and severally liable to Plaintiffs and the Plaintiff Class as a result of the conspiracy;

- whether Defendants acts were inherently undiscoverable by the Plaintiffs; and

- whether class members are entitled to punitive or exemplary damages against any or all Defendants.

49. Plaintiffs' claims are typical of the claims of the class. The claims have the same essential characteristics as the claims of the members of the class as a whole and are based upon identical legal theories. It is the same course of conduct that serves as the gravamen of the claims against Defendants. The members of the class have suffered the same type of injury and possess the same interests as Plaintiffs. The single resolution of these claims would be preferable to a multiplicity of similar actions.

50. Plaintiffs, as the representative party, will fairly and adequately protect the interests of the class. The counsel representing Plaintiffs and the class are qualified, experienced and able.

51. This suit is maintainable as a class action under Fed. R. Civ. P. 23 (b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, thereby making

appropriate final injunctive relief with respect to the class as a whole.

52. This suit is maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

53. *Predominance*. The questions of law or fact common to the members of the class predominate over any questions affecting only individual members. The facts that are disputed will be resolved without the participation of individual class members. Plaintiffs' claims do not present individual questions of causation or reliance. The facts of Defendants' practices are common to all members.

54. *Superiority*. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Given the large size of the class, individual adjudication of the claims would require hundreds of lawsuits. Moreover, intervention and joinder would require the intervention or joinder of hundreds of parties. Individual adjudication, intervention, and joinder, therefore, are not reasonable options. Class treatment is superior to all other methods of adjudicating the claims of the putative class.

55. *Individual control*. The interests of members of the class in individually controlling the prosecution or defense of separate actions do not outweigh the benefits of class treatment. Members of the class possess claims for economic damages that in most instances do not exceed a few thousand dollars. Thus, no individual class member possesses an overriding interest in the right to retain counsel and litigate to conclusion an individual claim. In fact, individual adjudication of these claims remains wholly impractical. The class members would be compelled to spend substantially more money on attorney's fees and case costs to prosecute

their individual claim than the amount of each individual claim.  The interest of members of the class in individually controlling the prosecution or defense of separate actions, therefore, does not outweigh the benefits of class treatment.

56. *Other factors.*  On information and belief, there are few if any other cases pending by or against members of the class raising the claims asserted herein.  This Court is the desirable forum for this controversy because the Defendants transact business in this District.  No significant difficulties are likely to be encountered in the management of a class action.  Plaintiffs will be able to identify class members through discovery of Defendants' extensive computer databases storing information regarding past and present consumer clients.  Thus, no difficulties exist regarding the identification of class members.

**FIRST CAUSE OF ACTION FOR VIOLATION OF**
**TRUTH IN LENDING - 15 USC § 1601 et seq.**
**(As to All Defendants)**

57. Lithia is a creditor as defined by 12 CFR § 226.2(a)(17).

58. Lithia extended credit to Plaintiffs in a written agreement that was subject to a finance charge and involved more than four installment payments.

59. Plaintiffs' use of the credit was for a personal, family, or household purpose.

60. Lithia regularly extends consumer credit as defined in 12 CFR § 226.2(a)(17)(v).

61. Lithia failed to comply with the disclosure requirements under the Truth in Lending Act (TILA).  15 U.S.C. §1638.

62. Specifically, as set forth above, for transactions where Lithia arranged financing for consumers and sold service contracts, extended warranties, and other third party add-ons, Lithia failed to properly disclose to consumers that a portion of the amount paid was retained by Lithia.  Lithia did not itemize each amount that is or will be paid to third persons by the creditor on the

consumer's behalf, together with an identification of or reference to the third persons.  Lithia also did not disclose that it did in fact retain a portion of the "amount paid to others." This constitutes a willful violation of TILA.  15 U.S.C. §1638(1)(2)(B)(iii); see also 12 CFR §226.18(c)(iii).

63. For transactions where Lithia arranged financing for consumers, Lithia retained a "yield spread premium," which is the difference between a higher interest rate quoted to a consumer and the rate received from the lender, without making the proper disclosures.  Alternatively, Lithia retained a "dealer reserve" – an amount kicked back to Lithia by the financial institutions that arranged the financing to the Plaintiffs.  Lithia further failed to clearly and conspicuously disclose to the Plaintiffs the existence of the yield spread premium or "dealer reserve" that were paid or received in relation to arranging financing for the Plaintiffs.  This constitutes a willful violation of TILA.  15 U.S.C. §1638(1)(2)(B)(iii); see also 12 CFR §226.18(c)(iii).

64. Plaintiffs have just discovered Defendants' violation of TILA.  Lithia's concealment, failure to disclose, and failure to itemize continue. The kickbacks from yield spreads and third party products remain secret, making it impossible for Plaintiffs to discover but for the revelations in this lawsuit.

65. As a result of Lithia's violations of the TILA, Plaintiffs were damaged.  Plaintiffs and all putative class members are entitled to recover damages pursuant to 15 U.S.C. § 1640, to include both actual damages and statutory damages.  Each Lithia Defendant is liable to the Plaintiffs for the actual damages equal to the amount of the markup either retained by or kicked back to the Lithia Defendants.  Each Lithia Defendant is also liable for statutory damages of lesser of 1% of its net worth or $1,000,000.00.

66. Plaintiffs are entitled to their reasonable attorneys' fees and costs, pursuant to 15 U.S.C. §1667d and 15 U.S.C. § 1640(a)(3).

**SECOND CAUSE OF ACTION FOR VIOLATION OF
OREGON UNLAWFUL TRADE PRACTICES ACT – ORS §646.605 ET. SEQ.
(AS TO ALL DEFENDANTS)**

67. Plaintiffs re-allege and incorporate herein all of the above paragraphs.

68. In addition, without waiving any of the other causes of action pled herein, without waiving any procedural, contractual, statutory or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, Defendants are liable to the Plaintiff for violating portions of the Oregon Unlawful Trade Practices Act (UTPA) (Or. Rev. Stat. §646.605 *et. seq.*).

69. All Lithia Defendants are "person(s)" within the meaning of the Oregon Unlawful Trade Practices Act.

70. Defendants are "dealers" within the meaning of the Oregon Unlawful Trade Practices Act and OAR 137-020-0020(2)(k).

71. Plaintiffs purchased the vehicles for personal use.

**Count 1: Payments to Third Parties or Payments Represented to go to Third Parties**

72. The Lithia Defendants' act of failing to disclose to Plaintiffs the amounts of money paid to third parties (or represented to go to third parties) for third party products(and the amount Lithia kept or the amount kicked back to Lithia) constitutes a willful violation of the Unlawful Trade Practices Act, as set forth more specifically in ORS §646.608 et. seq.  More specifically:

    A. Defendant made false or misleading representations of fact concerning reasons for, existence of, or amounts of price reductions in violation of ORS § 646.608(1)(j).
    B. Defendants made false or misleading representations of fact concerning the offering price of, and/or Plaintiffs' cost for the vehicles, service contracts, and other third party products in violation of ORS § 646.608(1)(s).

C. Defendants engaged in unfair or deceptive conduct in trade or commerce, in violation of ORS §646.608(1)(u); specifically, Defendants are dealers who sold or leased motor vehicles to consumers, and made payments to non-employee third-party(s) in conjunction with the sale or lease, and failed to specifically itemize such payment on the consumers' purchase order and/or retail installment contract, in violation of OAR 137-020-0020(3)(k).

73. More specifically, Defendants represented on the purchase order and/or the retail installment contract that Defendants paid a certain amount to third parties for the sale of service contracts or other add-ons.

74. Defendants paid to third parties a lesser amount than stated on the purchase order and/or the retail installment contract, and kept the rest as profits. Defendants did not disclose or itemize the actual amount that was paid to third parties or the actual amount retained by Defendants. These amounts that were paid to third parties exceed $100.

75. As a result of Defendants' violations of OAR 137-020-0020(3)(k), Plaintiffs suffered ascertainable loss and calculable damages in the difference between amount represented to be paid to third parties and the actual amount paid to third parties.

## Count 2: Yield Spread Premium

76. Defendants' act of failing to clearly and conspicuously disclose to Plaintiffs that Lithia did in fact receive additional compensation from Plaintiffs for arranging financing in the form of fees or loan points constitutes a willful violation of the Unlawful Trade Practices Act, as set forth more specifically ORS §646.608 et. seq.  More specifically:

A. Defendant made false or misleading representations of fact concerning reasons for, existence of, or amounts of price reductions in violation of ORS § 646.608(1)(j).
B. Defendants made false or misleading representations of fact concerning the offering price of, and/or Plaintiffs' cost for the vehicles and financing in violation of ORS § 646.608(1)(s).
C. Defendants engaged in unfair or deceptive conduct in trade or commerce in violation of ORS §646.608(1)(u); specifically, Defendants are dealers who charged consumers a yield spread premium, but failed to clearly and conspicuously disclose in writing,

prior to the consumer applying for credit or executing a purchase order or retail installment contract that the dealer may receive additional compensation from the consumer for arranging the sale of the retail installment contract which may be in the form of a fee or additional loan points in violation of OAR 137-020-0020(3)(u).

77. More specifically, in situations where the Defendants did not retain more than three points above the amount quoted by the lender, Defendants failed to clearly and conspicuously disclose that they were retaining the amount as additional compensation for arranging financing.

78. Upon information and belief, in some situations, Defendants quoted and retained more than three points higher than the interest rate quoted by the lender but failed to disclose the yield spread premium.

79. As a result of Defendants' violations of OAR 137-020-0020(3)(u), Plaintiffs suffered ascertainable loss and calculable damages in the difference in the amount of the yield spread premium because Defendants could not have charged any yield spread premium because Defendants failed to make proper disclosures.

## **Count 3: Violation of TILA**

80. Additionally, Defendants' violations of TILA as alleged above constitute violations of UTPA pursuant to OAR 137-020-0040(2).

81. Plaintiffs have just discovered Defendants' violation of UTPA. Lithia's concealment, failure to disclose, and failure to itemize continue. The kickbacks from yield spread premium, service contracts, and other payments to third parties remain secret, making it impossible for plaintiffs to discover but for the revelations in this lawsuit.

82. As a result of Defendants' above listed violations of the UTPA, Plaintiffs suffered losses that are objectively verifiable and ascertainable under the UTPA, including, but not limited to, the amount the Lithia Defendants retained in yield spread premium and/or the sale of the service contracts, and other add-ons.

83. Plaintiffs are entitled to actual damages equal to the amount of the markup either retained by or kicked back to the Lithia Defendants, or statutory damages of $200, whichever is greater. ORS §646.638(1). Plaintiffs are also entitled to recover punitive damages, and reasonable costs and attorney's fees at trial or on appeal. ORS §§646.638(1), (3).

84. The UTPA specifically allows for equitable remedies, which would include disgorgement and injunctive relief. ORS §646.638(1). Plaintiffs ask the court to set their application for injunctive relief for a full trial on the issue in this application and, after the trial, to issue a permanent injunction against the Defendants. Plaintiffs request the Court to enjoin the Defendants from receiving and/or providing kickbacks, undisclosed fees, or yield spread premiums in relation to (1): any service contracts sold to any consumer, (2): arranging financing to any consumer, (3): selling any third party products without providing the required disclosures to the consumer. Plaintiffs further request the Court to enjoin the Defendants from engaging in any such acts that violate the Truth In Lending Act, the Oregon Unlawful Trade Practice Act, or acts that constitute financial abuse to the elderly. 15 U.S.C. §1601; O.R.S. 646.605; O.R.S. 124.100.

85. The injunction is especially appropriate due to the Lithia entities having entered into various Assurance(s) of Voluntary Compliance with the Oregon Department of Justice, yet they continued to violate the UTPA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Defendants be cited to appear and answer herein, and upon final trial of this cause, the Court issue judgment that Plaintiffs have and recover against Defendants:

a)      actual damages;

b)      statutory damages;

c)      punitive damages;

d)      disgorgement of profits;

e)      injunctive relief as set out above;

f)      pre-judgment and post-judgment interest at the highest legal rate;

g)      legally-available reasonable and necessary attorneys' fees;

h)      costs; and

i)      all other relief, general and special, legal and equitable, to which Plaintiffs and the

Plaintiff Class are entitled.

**<u>PLAINTIFFS HEREBY REQUEST A TRIAL BY JURY</u>**

**<u>Dated: April 28, 2017</u>**

Respectfully submitted,

<u>/s/ Bonner Walsh</u>
**Bonner Walsh, Oregon Bar No. 131716**
Walsh LLC
21810 Pine Crest Dr.
Bly, Oregon 97622
bonner@walshpllc.com
Phone           541.359.2827
Facsimile       866.503 8206

**JACK E. MCGEHEE**                           **Young Walgenkim**
Oregon State Bar ID Number 160400             Oregon Bar No. 124900
jmcgehee@lawtx.com                            young@hansonwalgenkim.com
McGehee, Chang, Barnes, Landgraf              Hanson & Walgenkim, LLC
10370 Richmond Ave, Suite 1300                838 Commercial St NE
Houston, Texas 77042                          Salem, OR 97301
Phone           713.864.4000                  Phone           503.383.1496
Facsimile       713.868.9393                  Facsimile       503.766.6477

**Special Counsel for Plaintiffs**

**COMPLAINT AND JURY DEMAND**                                    **P a g e | 25**